NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **MARK SHVARTSMAN,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 11-03643 (JAP)** |
| **LONG TERM DISABILITY INCOME PLAN FOR CHOICES ELIGIBLE EMPLOYEES OF JOHNSON & JOHNSON, et al.,** | **OPINION & ORDER** |
| **Defendants.** | |

This matter has been opened to the Court upon Motion [Docket Entry No. 11] by Plaintiff Mark Shvartsman ("Plaintiff") seeking an Order compelling discovery from Defendant Long Term Disability Income Plan for Choices Eligible Employees of Johnson & Johnson, et al. ("Defendants"). Defendants oppose Plaintiff's motion. The Court has fully reviewed the submissions of the parties and considers same without oral argument pursuant to FED. R. CIV. P. 78. For the foregoing reasons, Plaintiff's Motion to Compel is DENIED without prejudice.

## I.  Background and Procedural History

The underlying case relates to Plaintiff's appeal of a Long Term Disability ("LTD") eligibility determination. Plaintiff, an employee of Johnson & Johnson ("J & J") filed a claim for LTD benefits, which was approved in April 2008. In accordance with the terms of the LTD Plan, Reed Group, the third-party administrator responsible for making claim determinations, reviewed Plaintiff's continuing eligibility and in April 2009, Plaintiff underwent a neuropsychology examination performed by Kenneth Kutner, PhD on behalf of Reed Group. At

that time, Dr. Kutner determined that Plaintiff was still disabled and Plaintiff was again approved for LTD benefits.  In April 2010, Dr. Kutner performed another neuropsychology examination on Plaintiff and concluded that Plaintiff was not incapable of performing in any occupation.  As a result, Plaintiff's claim for continuing LTD benefits was denied on April 21, 2010.

Pursuant to the requirements of  J & J's disability plan ("J & J Plan"), Plaintiff appealed the denial determination to Reed Group who upheld the denial.  Plaintiff then brought a second appeal before J & J's Pension Committee in accordance with the appeals process.  On April 19, 2011, Plaintiff was notified by letter signed by Mr. Richard McDonald, Director of Corporate Benefits for the J & J Pension Committee, that the denial of benefits was being upheld.  Plaintiff then commenced this action against Defendants on June 23, 2011 [Docket Entry No. 1] alleging, among other claims, violation of the Employee Retirement Income Security Act of 1974 ("ERISA").

Prior to a Rule 16 Conference in this case, Plaintiff demanded that Defendants identify any third party reviewers of Plaintiff's claim as well as other information. *See Exhibits I, K, L, N, P, Q, R, S to Plaintiff's Brief in Support of Motion to Compel Discovery*, No. 11-3643 (JAP), Docket Entry No. 11-11,11-13,11-14,11-16,11-18 - 11-21.  Plaintiff was not satisfied with Defendants' responses.  During the Rule 16 Conference held on October 17, 2011, it was determined that Plaintiff would serve discovery on Defendants, who then could make specific objections to any requests they deemed were inappropriate for an ERISA matter.  Plaintiff served discovery on Defendants on December 20, 2011.  Defendants served responses shortly thereafter, which included numerous objections.

2

Plaintiffs learned, through Mr. McDonald, that a third party review firm, Claim Appeal Fiduciary Services ("CAFS"), reviewed Plaintiff's final appeal and that a J & J occupational health nurse, Valerie Pax, had also performed a review and made recommendations regarding Plaintiff's claim.  Neither Nurse Pax's name nor the name "CAFS" appears in the administrative record.  Plaintiff then requested more information from Defendants, to which Defendants again objected.  The parties "met and conferred" on January 12, 2012 in an attempt to resolve these discovery issues without court intervention; however, their efforts were unsuccessful.  Plaintiff then, with the permission of the Court, filed this motion seeking to compel discovery from Defendants.

### A. Plaintiff's Position

 Throughout their moving brief, Plaintiff alleges that Defendants have "upheld their denial decision in a manner that was cloaked in secrecy" and Plaintiff offers three arguments in support of its request for discovery. *Plaintiff's Brief in Support of Motion*, Docket Entry No. 11-1, *5.  First, Plaintiff contends that discovery may be had into procedural irregularities, which he claims exist here.  Second, Plaintiff asserts that Defendants' objections were inappropriate boilerplate objections.  Third, Plaintiff contends that a structural conflict of interest exists within the Plan itself which allows Plaintiff to conduct discovery into the extent of the conflict.  Each will be addressed in turn.

### 1.  Procedural Irregularities

Plaintiff argues that discovery may be had into procedural irregularities.  *Miller v. Am. Airlines, Inc.,* 632 F.3d 837 (3d Cir. 2011).  Plaintiff asserts that the Court can consider evidence

of potential bias and conflict that is not in the administrative record. *Howley v. Mellon Fin. Corp.*, 625 F.3d 799, 793-94 (3d Cir. 2010) (citing *Burke v. Pitney Bowes, Inc. Long-Term Disability Plan*, 544 F.3d 1016, 1028 (9th Cir. 2008)). Plaintiff contends that "[h]ere, there are a host of procedural irregularities pointing to bias in the decision-making, which require discovery into what the administrator kept hidden during the administrative process through its unilateral refusal to place relevant information into the record." *Plaintiff's Brief in Support of Motion*, Docket Entry No. 11-1, *7-8. Specifically, Plaintiff contends that four procedural irregularities exist: (1) Defendant's concealment of the identifies of the reviewers and fiduciaries; (2) the secret review conducted by Nurse Pax; (3) the incompleteness of the administrative record; and (4) J & J's unjustified reliance on the opinion Dr. Kutner.

As to the first alleged procedural irregularity, Defendants' alleged concealment of the identities of the reviewers and fiduciaries, Plaintiff contends that the final denial letter of Plaintiff's LTD claim was ghostwritten by an anonymous person(s) at a third party review firm, CAFS. Plaintiff argues that Defendants have not provided the name or credentials of the person who ultimately made the decision to deny benefits. In addition, Plaintiff asserts that the methods by which this person(s) came to his determination of denial have not been revealed. Plaintiff states that ERISA regulations require a full and fair review, which requires that the administrator identify the medical experts whose advice it obtained, without regard to whether the advice was relied upon in making the benefit determination, 29 C.F.R. §2560.503-1(h)(3)(iv), and that the Plan afford review by "the appropriate *named* fiduciary." 29 U.S.C. §1133 (emphasis added). Thus, Plaintiff concludes that Defendants' allegedly intentional denial of this information is a violation of ERISA's promise of a full and fair review of claims. Plaintiff cites to a number of

4

cases from other jurisdictions in support of his proposition that he is entitled to discovery concerning the identification of experts and/or reviewers. *See Plaintiff's Brief* at *13-16.

As to the second alleged procedural irregularity, Plaintiff argues that the medical review conducted by Nurse Pax was done in secrecy.  Plaintiff expresses concern that Nurse Pax did not sign the review, nor does her name appear on the paperwork.  Plaintiff again asserts that ERISA requires the identification of experts consulted.  29 C.F.R. §2560-503-1(h)(3)(iv).  Plaintiff argues that the administrative record contains no information regarding what information Nurse Pax reviewed or who, if anyone, read her review.  Plaintiff also suggests that Nurse Pax's recommendation was based on CAFS's investigation and, thus, was not truly an independent review. Plaintiff would like discovery into the "contents" of Nurse Pax's review. *Plaintiff's Brief* at *18.

As to the third alleged procedural irregularity, Plaintiff alleges that the administrative record is incomplete.  Plaintiff states that his repeated discovery attempts have gone unanswered and he argues that a claimant must have an opportunity to contest whether the administrative record is complete. *Estate of Bratton v. Nat'l Union Fire Ins. Co.*, 215 F.3d 516, 521 (5th Cir. 2000); *Glennon v. Prudential Ins. Co. of Am.,* 2009 WL 4405755 (N.D. Ga. Dec. 2, 2009). Plaintiff further asserts that Defendants have ignored that ERISA requires that the administrative record include anything submitted, considered or generated without regard to whether the administrator believes it relied upon the information.  29 C.F.R. 2560-503-1(m)(8).  Plaintiff states that Defendants have unilaterally decided what information to put into the record.

As to the fourth procedural irregularity, Plaintiff seeks discovery into the relationship

between the Reed Group, J & J and Dr. Kenneth Kutner, who J & J consistently hires to provide psychological examinations.  Plaintiff states that Defendants refused to provide evidence regarding Dr. Kutner's credentials, his history of working for J & J and Reed Group, and how much of his income is dependent on the consultative services he provides for claim administrators such as the Reed Group.  Plaintiff asserts that Defendants relied on Dr. Kutner's opinion even though he was discredited and Plaintiff states that this reliance permits him to "explore [for] the presence of bias or conflict and the unfairness of review." *Plaintiff's Brief* at *22, 23.

## 2.  Defendants' Alleged Boilerplate Objections

Second, Plaintiff contends that Defendant's boilerplate objections to Plaintiff's discovery are inappropriate because "Defendants offer no evidence or justification for their blanket objections." *Plaintiff's Brief* at *25.  Plaintiff cites to Fed. R. Civ. P. 26(g) and to this Court's ruling in *NE Tech, Inc. v. Evolving Sys.,* 2008 WL 4277668 (D.N.J. Sept. 12, 2008) in support of its argument that Defendants' statements be stricken from the record, and that Defendants be compelled to provide the discovery requested by Plaintiff.

## 3.  Structural Conflict of Interest

As its third and final argument, Plaintiff asserts that "the structural conflict of interest inherent in being the payor of ancillary benefits and the decision maker infected J & J's review of the claim." *Plaintiff's Brief* at *27.  Plaintiff relies on *Miller v. American Airlines, Inc.,* 632 F.3d 837 (3d Cir. 2011) in support of its argument that a structural conflict, in fact, exists under the circumstances presented in this case.  Plaintiff explains that "[a]lthough the [Plan] is funded by

6

participant contributions, the Plan is administered by the same Committee that administers other employee benefits that *are* funded by J & J." *Plaintiff's Brief* at *29.  Plaintiff contends that, because a structural conflict of interest exists here, Plaintiff is entitled to discovery into the extent of the conflict.  *Luby v. Teamsters*, 944 F.2d 1176 (3d Cir. 1991).

### B.  Defendant's Arguments

 Defendants assert that they have complied with applicable law and that Plaintiff has not established any valid reason which entitles him to the discovery he seeks.  First, Defendants assert that in a case such as this, which is governed by ERISA, discovery is limited to the administrative record.  Defendants contend that they have provided this information to Plaintiff and Plaintiff has not provided a basis for compelling production of the additional discovery he seeks.  Second, Defendants state that there is no conflict of interest in the organizational structure of the Plan which warrants discovery beyond the administrative record.  Third, Defendants argue that Plaintiff has not set forth any evidence of procedural irregularities which would entitle Plaintiff to additional discovery.  Lastly, Defendants contend that their objections to Plaintiff's discovery requests were valid and, as such, should not be stricken from the record.

### 1.  Administrative Record and Standard of Review

With respect to Plaintiff's claims that the claim determination was "cloaked in secrecy," Defendants state that this allegation is unfounded and that they did not hide any substantive information from Plaintiff.  Defendants explain the events which led to the ultimate decision to uphold the denial of benefits and they outline the information that was entered into the

administrative record.  Defendants contend that the "process by which the administrators reached their decision to deny [Plaintiff's] claim for LTD benefits is fully evident from the face of the administrative record." *Id.* at *8-9.  Defendants argue that they "openly acknowledged" their use of the independent third party review firm, CAFS, and that they provided Plaintiff with this information at the January 12, 2012 meet and confer.  Further, Defendants assert that Plaintiff's allegation that the denial letter from Richard McDonald was "ghostwritten" is without merit and Defendants explain that Mr. McDonald possessed the authority to grant or deny Plaintiff's benefit claim.  In light of the above, Defendants conclude that "[t]he claim determination was based upon the complete administrative record which has been maintained and provided to [Plaintiff] in accordance with the applicable ERISA regulations." *Id.* at *9.  As such, Defendants argue that Plaintiff's motion should be denied.

Defendants assert that the applicable standard of review in a case such as this is arbitrary and capricious. *Id.* at *10.  In addition, Defendants contend that, in this district, a court's review of a claim for benefits under the arbitrary and capricious standard of review is "limited to that evidence that was before the administrator when it made the decision being reviewed." *Mitchell v. Eastman Kodak, Co.,* 113 F.3d 433, 440 (3d Cir. 1997); *see also Abnathya v. Hoffmann-La Roche, Inc.,* 2 F.3d 40, 48 n.8 (3d Cir. 1993); *Johnson v. UMWA Health & Retirement Funds,* 125 Fed. Appx. 400, 405 (3d Cir. 2005); *O'Sullivan v. Metropolitan Life Insurance Co.,* 114 F.Supp. 2d 303, 309 (D.N.J. 2000); *Weiss v. First Unum Life Ins. Co.,* Civil No. 02-4249, 2008 WL 5188857, at *10-11 (D.N.J. December 10, 2008).  Thus, Defendants conclude that the Court's review of ERISA benefit denials under the arbitrary and capricious standard of review is

8

limited to the administrative record.

Defendants further assert that the contents of the administrative record is mandated by ERISA regulations. 29 C.F.R. § 2560.503-1(m)(8).  Defendants contend that the administrative record in this case contains all relevant information required by the ERISA regulations and Defendants certify that any and all information and documentation that was "submitted, considered or generated in the course of making the claim determination," was produced during the administrative review process when requested in compliance with 29 C.F.R. 2560.503-1(m)(8)(ii).  Defendants assert that Plaintiff's requests are broad, vague and that Plaintiff has failed to provide any justification why the discovery he seeks should have been included in the administrative record under the governing ERISA regulations.  Finally, Defendants point out that Plaintiff has cited to cases outside of this jurisdiction in support of his contention that he is entitled to discovery regarding the completeness of the administrative record. *Defendant's Opposition* at *15.

## 2.  Structural Conflict of Interest

In response to Plaintiff's argument that he is entitled to discovery beyond the administrative record because Defendants were operating under a structural conflict of interest when they denied benefits to Plaintiff, Defendants assert that no such conflict existed.    Plaintiff admits that the J & J Plan at issue was fully funded by participating employee contributions; however, Plaintiff argues that he is entitled to discovery because the J & J Plan is administered by the same Pension Committee that administers other employee benefits which are funded by Johnson and Johnson.  In addition, Plaintiff has argued that funding of a plan in an indirect way

9

can still create a conflict of interest.  Defendants contend that Plaintiff's arguments are

unfounded and Defendants cite a number of cases in support of their position that there is no

structural conflict of interest in the organization of the Plan.  *See Miller v. American Airlines,*

*Inc.*, 632 F.3d 847 (3d Cir. 2011) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101,

115 (1989)); *see also Pinto v. Reliance Standard Life Ins. Co.*, 214 F.3d 377, 383 (3d Cir. 2000),

*modified on other grounds by Estate of Schwing v. The Lilly Health Plan*, 562 F.3d 522, 525 (3d

Cir. 2009); *see also Post v. Hartford Ins. Co.*, 501 F.3d 154, 164 (3d Cir. 2007).

Defendants point out that this District has addressed whether there were any structural

conflicts of interest with respect to the specific J & J Plan at issue here; both times finding that

there were not.  *See Zurawel v. Long Term Disability Income Plan For Choices Eligible*

*Employees of Johnson and Johnson*, Civil Action No. 07-5973, 2010 WL 3862543 (D.N.J. Sept.

27, 2010) *Dunn v. Reed Group, Inc.*, Civil Action No. 08-1632, 2009 WL 2848662 (D.N.J. Sept.

2, 2009).  Defendants explain that there is no legal support for Plaintiff's arguments for a

structural conflict of interest because there is no financial incentive for the decision-makers to

deny benefits because they are not responsible for funding the LTD Plan. *Defendants' Opposition*

at *20.

### 3.  Procedural Irregularities

Defendants further argue that Plaintiff's motion to compel discovery should be denied

because there is no evidence of procedural irregularities or bias in the administrator's decision-

making process.  Defendants maintain that, contrary to Plaintiff's argument, case law in this

jurisdiction dictates that "procedural abnormalities are determined by review of the

10

administrative record, and are not a basis for discovery beyond the administrative record." *Id.* at

*22. Moreover, Defendants assert that Plaintiff has failed to present a good faith basis for his

allegations that procedural irregularities infected the administrator's determination with regard to

the Plan. Defendants discuss the procedural abnormalities which may raise suspicion as to a plan

administrator's decision-making and Defendants assert that these abnormalities are determined

by a review of the administrative record. *Tylwalk v. Prudential*, 257 Fed.Appx. 568, 571 (3d Cir.

2007) (citing *Post*, 501 F.3d at 165 (holding that procedural irregularities may arise where claims

determination reflects: reversal of position without additional medical evidence; self-serving

selectivity in the use and interpretation of physician's reports; disregard of staff

recommendations that benefits be awarded; and request for a medical examination when all

evidence indicates disability)); *see also Zurawel v. Johnson & Johnson,* Civil No. 07-5973,

Docket Entry No. 25; *see also Id.*, Docket Entry No. 16. Defendants distinguish the case at hand

from those relied on by Plaintiff. *Defendants' Opposition* at *23. Defendants conclude that "[a]

review of the administrative record, and a proper reading of the law of this Circuit, clearly

demonstrates that Defendants' decision to terminate Plaintiff's LTD benefits was the product of

reasoned decision-making and substantial evidence." *Id.* at *24. Defendants further allege that

Plaintiff has failed to set forth any basis which would entitle him to discovery beyond the

administrative record.

    With respect to the identities of reviewers and fiduciaries, Defendants contend that

Plaintiff's arguments are unfounded and "borderline frivolous." *Id.* at *25. Defendants certify

that they have been forthright with information regarding the identities of reviewers and

11

fiduciaries.  Similarly, Defendants contend that Plaintiff was sufficiently informed with respect to the review conducted by Nurse Pax.  In response to the discovery requests pertaining to Dr. Kutner, Defendants assert that certain information requested by Plaintiff is not in Defendants' possession, while other information, such as Dr. Kutner's compensation for his services, is not discoverable.  Defendants contend that Plaintiff has not provided any legal basis for his requests.

### 4.  Boilerplate Objections

Defendants' final argument concerns their objections to Plaintiff's discovery requests. Defendants explain that Plaintiff's discovery requests were not narrowly tailored and do not clearly specify what information is being sought.  As such, Defendants contend that their objections are valid and should not be stricken from the record.  Defendants suggest that Plaintiff could have amended the discovery requests to correct the deficiencies.  Regardless, Defendants argue that Plaintiff has not provided sufficient persuasive authority in support of his argument that Defendants' boilerplate objections are inappropriate.

### C.  Plaintiff's Reply

Plaintiff responds to Defendants' assertion that discovery beyond the administrative record is prohibited in cases using an arbitrary and capricious standard of review.  Plaintiff argues that discovery into procedural irregularities can be made upon a "minimal showing of bias or irregularity that could have impacted the administration of the claim." *Dandridge v. Raytheon Co.,* 2010 WL 376598, 6 (D.N.J.,2010).  Plaintiff explains that exhaustion of administrative

12

remedies "is meant to ensure a full and complete record and eliminate the need for further discovery." *Id.* However, Plaintiff concludes that if the record is incomplete, discovery is necessary to complete it and ensure fairness to the claimant. *Plaintiff's Reply*, Docket Entry No. 15, *6.

Throughout his Reply Brief, Plaintiff further elaborates as to why he believes he is entitled to discovery in order to complete the administrative record. Plaintiff again asserts that Defendants concealed the identities and credentials of medical reviewers, CAFS and Nurse Pax. Plaintiff further asserts that Defendants prevented Plaintiff from supplementing the administrative record as he argues he is entitled to do under *O'Sullivan*. 114 F.Supp. 2d at 309-310.[1] In addition, Plaintiff again refers to decisions in other jurisdictions which have permitted discovery into the amount of money paid to a medical reviewer or IME doctor from defense insurance work. Plaintiff wishes to obtain similar information from Dr. Kutner in this case.

Plaintiff also argues that Defendants have alleged facts in their Opposition which Plaintiff asserts lack verification in the administrative record. Plaintiff contends that this "further substantiates the need for discovery." *Plaintiff's Reply* at *8. Plaintiff again discusses case law from other jurisdictions in support of his position that he is entitled to discovery into the completeness of the administrative record. *Id.* at *9. Plaintiff again asserts that the fact that the Pension Committee is the plan administrator for both the LTD Plan as well as a separate J & J Health and Welfare Plan entitles him to discovery into the procedures undertaken to ensure the

---

[1]Plaintiff does not provide specific examples of how or with what he attempted to supplement the record. In addition, Plaintiff raises this issue for the first time in his Reply Brief. As such, the Court will not entertain this argument.

13

Pension Committee's compliance with ERISA. *Id.* at *9-10.  Plaintiff also discusses the

responsibilities of fiduciary under ERISA.  Presumably, this discussion goes toward Plaintiff's

argument that he is entitled to discovery into the propriety of the fiduciary's decision.

## II.  Analysis

### A.  Standard of Review

In cases governed by the Employment Retirement Income Security Act ("ERISA") where

the plan affords the administrator discretionary authority, the administrator's interpretation of the

plan "will not be dismissed if reasonable." *Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 437

(3d. Cir. 1997) (*quoting Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989). In

other words, when a plan administrator has discretion to determine a claimant's eligibility for

benefits, the plan administrator's decision is subject to review under an arbitrary and capricious

standard. *Doroshow v. Hartford Life and Acc. Ins. Co.*, 574 F.3d 230, 233 (3d Cir. 2009).  Under

the arbitrary and capricious standard, the claim determination will be upheld if it is supported by

substantial evidence. *Doroshow*, 574 F.3d at 234 ("Under a traditional arbitrary and capricious

review, a court can overturn the decision of the plan administrator only if it is without reason,

unsupported by substantial evidence or erroneous as a matter of law").

Typically in ERISA cases in which the arbitrary and capricious standard of review is

used, the Court limits its review of the plan administrator's denial of benefits to only that

evidence that was before the administrator when he or she made the decision being reviewed. *See*

*Mitchell,* 113 F.3d at 440 (finding that under an arbitrary and capricious standard of review, the

court looks to record as a whole, and that "whole" record consists of evidence that was before

14

administrator when the decision being reviewed was made); *see also Johnson v. UMWA Heath and Ret. Funds*, 125 Fed. Appx. 400, 405 (3d Cir. 2005) (finding that "record for arbitrary and capricious review of ERISA benefits denial is record made before the plan administrator which cannot be supplemented during litigation").  However, the Court notes that "when a reviewing court is deciding whether to employ the arbitrary and capricious standard or a more heightened standard of review, it may consider evidence of potential biases and conflicts of interest that are not found in the administrator's record." *Johnson*, 125 Fed. Appx. at 405-06.  The type of evidence considered by courts focuses on whether a heightened standard of review is required either because there is a question regarding whether a structural conflict of interest exists (i.e. is the entity making benefits determinations also financially interested in those determinations) or because the administrative record is overwrought with procedural anomalies. *See, generally, Kosiba v. Merck & Co.*, 384 F.3d 58, 64-67 (3d Cir. 2004); *Pinto v. Reliance Standard Life Ins. Co.*, 214 F.3d 377, 393-95 (3d Cir. 2000).  Therefore, discovery will typically not be permitted beyond the administrative record in ERISA cases unless some extrinsic factor exists, such as a structural conflict of interest or significant procedural anomalies.

## B.  Structural Conflict of Interest - Standard of Review

The Supreme Court in *Glenn* altered the way in which a conflict of interest is handled by the courts. *Metropolitan Life Ins. Co. v. Glenn*, 128 S.Ct. 2343, 2348 (2008).  Previously, a finding of a conflict of interest resulted in the heightening of the arbitrary and capricious standard along a sliding scale, taking into account several factors including, the "sophistication of the parties, the information accessible to the parties, the exact financial arrangement between the

15

insurer and the company; and the status of the fiduciary, as the company's financial or structural deterioration might negatively impact the presumed desire to maintain employee satisfaction." *Stratton v. E.I. Dupont de Nemours & Co.*, 363 F.3d 250, 254 (3d Cir. 2004) (internal quotations omitted). *Glenn* rejected heightening the arbitrary and capricious standard.  In *Glenn*, the Supreme Court reasoned that *Firestone* held that the word "factor" implies that courts should review the propriety of benefit denials, by taking into account many factors, including a conflict of interest. *Glenn*, 128 S.Ct. at 2351 (discussing *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989)). Effectively, the Court reaffirmed *Firestone* to the extent that deference should be given to "the lion's share of ERISA claims." *Id.* at 2350.  The Court opined that the conflict of interest may be more important in circumstances "suggesting a higher likelihood that it affected the benefits decision," and would prove less important "when the administrator has taken active steps to reduce potential bias." *Id.* at 2351. Potential bias could be reduced "by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decision making irrespective of whom the inaccuracy benefits." *Id.*  In any event, the governing standard requires Plaintiff to show that the denial of benefits was arbitrary and capricious, with a conflict of interest as simply one factor for the court's consideration. *Estate of Schwing v. The Lilly Health Plan*, 562 F.3d 522, 525 (3d. Cir. 2009); *see also Howley v. Mellon Financial Corp.*,No. 08-1748, 2010 WL 3397456, at *4 (3d Cir. Aug. 31, 2010)

A conflict of interest can be created, for example, when an employer both funds and evaluates employee claims. *Glenn*, 128 S.Ct. at 2348.  A conflict of interest can also be created if

16

an employer pays an independent insurance company to both evaluate claims and pay plan benefits. *Id.* at 2349; *Pinto v. Reliance Standard Life Ins. Co.*, 214 F.3d 377, 383 (3d Cir. 2000). However, a conflict of interest is not present if an employer funds a benefits plan, but an independent third party is paid to administer the plan. *Pinto*, 214 F.3d at 383. Additionally, if an employer establishes a plan and creates an internal benefits committee vested with the discretion to interpret the plan and administer benefits, a conflict of interest does not exist. *Id.*; *see also Post v. Hartford Ins. Co.*, 501 F.3d 154, 164 n. 6 (3d Cir. 2007).

## 1. Application - Structural Conflict of Interest

In this case, the plan is funded by employee contributions, which greatly reduces potential bias. Additional potential for structural conflict of interest is further mitigated when, as here, the employer hires a third-party to administer the plan. *Pinto*, 214 F.3d at 383. This is especially true when, as here, the employer also creates an internal committee with discretion to interpret the plan and administer benefits. *Id.*; *see also Post*, 501 F.3d at 164 n. 6. Plaintiff's suggestion that a conflict is created merely because the Plan is administered by the same Committee that administers other employee benefits which are funded by J&J and because the third-party administrator is being paid by Defendants is plainly contrary to cases where a structural conflict of interest has been found. *See, e.g., Zurawel v. Long Term Disability Income Plan for Choices Eligible Employees of Johnson & Johnson,* Civil Action No. 07-5973, 2010 WL 3862543 (D.N.J. Sept. 27, 2010); *see also, e.g., Dunn v. Reed Group*, Civil Action No. 08-1632, 2009 WL 2848662 at *9 (D.N.J. Sep. 2, 2009). In both *Zurawel* and *Dunn*, the Court held that the very same LTD Plan arrangement at issue in this case did not present a conflict of interest. As such,

the Court finds that in this instance there is no structural conflict of interest which could open the door to discovery beyond the administrative record.

In addition, Plaintiff's reliance on *Miller* is misplaced. *Miller v. American Airlines, Inc.,* 632 F.3d 837 (3d Cir. 2011).  First, the plan at issue in *Miller* is factually distinguishable from the Plan in case at hand.  Plaintiff contends that the Court's ruling in *Miller* served to clarify the Supreme Court's holding in *Glenn* and Plaintiff asserts that the holding in *Miller* allows for a finding of a conflict of interest where an employer "funds" a plan in an indirect way. *Plaintiff's Brief in Support of Motion*, Docket Entry No. 11-1, *28.  However, the court in *Miller* analyzed a benefit plan in which "an *employer* makes fixed contributions to a plan, evaluates claims, and pays claims through a trust." *Miller*, 632 F.3d at 847(emphasis added).  In this case, there is no dispute that the Plan is funded solely through participant contributions and is administered by a third-party administrator.

Further, the Court notes that discovery beyond the administrative record would be unnecessary even if the Court determined that the alleged conflict of interest existed because conflict of interest should be considered only as "a factor in determining whether Defendants abused its discretion in denying Plaintiff's benefits." *Glenn*, 128 S.Ct. at 2346; *see also Magera v. The Lincoln National Life Insurance Company*, 2009 WL 260993 at *6 (M.D. Pa. Feb. 4, 2009).  Therefore, because the Court can determine whether a conflict of interest exists based on documents in the administrative record, and because a finding of conflict of interest would not alter the rule that the entire record consists of the evidence in front of the administrator when making the decision under review, the Court denies Plaintiff's motion to compel discovery

beyond the administrative record. *See Zurawel*, 2010 WL 3862543.

### C. Procedural Irregularities

With respect to the existence of procedural abnormalities in an ERISA case, Plaintiff

again misapplies the law.  As with the existence of a conflict of interest, the existence of

procedural abnormalities could open the door to discovery beyond the administrative record and

a court may "consider evidence of potential biases and conflicts of interest that is not found in the

administrator's record." *Howley v. Mellon Financial Corp.*, 625 F.3d 788, 793-94 (C.A.3 N.J.

2010)(*quoting Kosiba v. Merck & Co.*, 384 F.3d 58, 67 n. 5 (3d Cir.2004); *see also Burke v.

Pitney Bowes Inc. Long-Term Disability Plan*, 544 F.3d 1016, 1028 (9th Cir.2008) ("[T]he

district court may consider evidence outside the administrative record to decide the nature,

extent, and effect on the decision-making process of any conflict of interest.") (internal quotation

marks omitted).  However, given the Supreme Court's holding in *Glenn*, evidence of procedural

abnormalities, or some other bias, is to be considered as a factor in determining whether an

administrator's denial of benefits was arbitrary and capricious in the same way that the existence

of a conflict of interest is to be considered as a factor.  Plaintiff has not presented any case law,

and the Court has not found any, which suggests that the existence of procedural abnormalities is

an automatic trigger permitting discovery beyond the administrative record.

Further, procedural abnormalities are determined by a review of the administrative

record. *See Zurawel*, 2010 WL 3862543.  As Defendant points out, the cases relied on by

Plaintiff predate the Supreme Court's decision in *Glenn*.  Assuming that aspects of the pre-*Glenn*

cases which permit discovery to prove the existence of bias, conflict of interest or inconsistent

decision-making survive, courts in this district have ruled that discovery should be allowed when a plaintiff presents a good faith basis for alleging some bias or that a conflict infected the administrator's determination.  *Delso v. Trustee of Retirement Plan for Hourly Employees of Merck, Inc.*, 2006 WL 3000199 at *3 (D.N.J. Oct. 20, 2006).  The court in *Delso* further stated that "[i]f a plaintiff establishes a reasonable suspicion of misconduct, then courts should allow discovery requests reasonably likely to either confirm or disconfirm the presence of bias." *Id.*  In this case, however, Plaintiff has not established a good faith basis for alleging bias, conflict of interest, or irregularity in the Defendant's decision-making process.  There is nothing in the administrative record, or in Plaintiff's brief, which raises a "reasonable suspicion of [Defendant's] misconduct." *Id.*

In addition, even when the Court applies the more liberal standard used by the court in the *Dandridge* case cited by Plaintiff, Plaintiff still has not met his burden.[2]  Plaintiff's examples of procedural irregularities consist of broad allegations for which Plaintiff does not provide a factual basis.  For example, Plaintiff asserts that the final denial letter signed by Mr. McDonald was "ghostwritten by an anonymous person."*Plaintiff's Brief*, Docket Entry No. 11-1, *12.  Plaintiff

_____

[2]While *Dandridge* suggests that discovery is permitted upon a minimal showing of bias or irregularity that could have impacted the administration of the claim, *Dandridge* is a not precedential opinion, and thus, without further guidance from the Third Circuit, this Court cannot conclude that full-scale discovery is permitted based upon a showing of bias or irregularity in every case because such a position would appear to conflict with pre-existing Third Circuit authority. *See, e.g., In re Merck & Co. ., Inc., Sec. Litig*., 432 F.3d 261, 274 (3d Cir.2005) (noting "precedential cases cannot be overruled unless by the Circuit en banc."); cf. *Wallace v. Abel*, 318 Fed. Appx. 96, 98 n. 4 (3d Cir.2009) ("The court by tradition does not cite to its not precedential opinions as authority. Such opinions are not regarded as precedents that bind the court because they do not circulate to the full court before filing.") (quotation omitted).

provides no evidence to support this allegation.  Additionally, Plaintiff contends that Defendants withheld the identities of reviewers and fiduciaries.  Defendants certify that they have provided this information to Plaintiff and there is nothing before the Court to suggest that there are additional decision-makers whose identities remain unknown.  Similarly, Defendants have identified Nurse Pax and Plaintiff has failed to offer any evidence to support his assertion that her review was "cloaked in secrecy."  Also, Plaintiff's allegation that J&J unjustifiably relied on Dr. Kutner's opinion is unsupported by the record.

Finally, Plaintiff asserts that the administrative record is incomplete.  However, Plaintiff has not specifically indicated what information he asserts is missing.[3]  If Plaintiff means to imply that the identities of reviewers and fiduciaries has been withheld, the Court notes, again, that Defendants have certified as to the identities of those agencies and individuals and Plaintiff has not provided any evidence to indicate that the information provided is incomplete.  Plaintiff does not suggest that any specific documents or correspondence are missing from the administrative record.  To the extent that Plaintiff means to imply that all the information requested via his Notice to Produce and Interrogatories should be included in the administrative record, Plaintiff

---

[3]The Court notes that Plaintiff provides a list of items which he "seeks... into the completeness of the administrative record." *Plaintiff's Brief*, Docket Entry No. 11-1 at *21. Given the wording of this request, it appears that Plaintiff is seeking that information in order to determine what may be missing from the administrative record.  It does not appear to be Plaintiff's assertion that these documents, themselves, should have been included in the administrative record. For example, reason dictates that Plaintiff's Notice to Produce No. 24 ("all communications between the Pension committee, Mr. McDonald and Dr. Kutner") would not be a part of the administrative record concerning Plaintiff.  As such, these discovery request appear to be a "fishing expedition" by Plaintiff in an effort to locate support for his argument that crucial information was omitted from the administrative record.

provides no justification or case law in support of this assertion.

ERISA regulations specifically mandate what information must be included in the administrative record.  29 C.F.R. 2560.503-1.  As described above, Defendants certify that they have complied with those requirements.  *See Exhibit T to Plaintiff's Motion*, Docket Entry No. 11-22, *2.  While Plaintiff contends that Defendants unilaterally selected what information would be included in the administrative record, and what information would be excluded, Plaintiff has failed to identify specifically what information was excluded and, moreover, has failed to show any basis for this Court to find that the excluded  information was submitted, considered, or generated when the claim determination was made.  *See* 29 C.F.R. 2560.503-1(m)(8)(ii).  Because this Court finds that the administrative record is complete and contains all information submitted, Defendants have no obligation under ERISA regulations, or Third Circuit law, to provide the additional information Plaintiff seeks.

### C.  Boilerplate Objections

The Court has reviewed Plaintiff's Notice to Produce and Interrogatories and Defendants' responses to same.  The Court finds that, although some of Defendants' responses contain boilerplate language, Plaintiff's discovery requests are improperly vague and expansive and Defendants have objected appropriately.  As evidenced by Defendants' discovery responses and by their Brief in Opposition to Plaintiff's motion, Defendants certify that they have provided Plaintiff with the complete administrative record.  They further certify that they have fulfilled their obligations under ERISA.  Indeed, much of the information Plaintiff seeks, as discussed above, is beyond the administrative record and Plaintiff has not provided justification as to why

the items he seeks should have been included in the administrative record. Further, many of Plaintiff's discovery requests seek documentation which is not in Defendants' possession.  As such, Defendants have no obligation, and no ability, to provide Plaintiff with same.

**III.  Conclusion**

      For the reasons set forth above; and for good cause shown

IT IS on this 11th day of June, 2012,

      ORDERED that Plaintiff's Motion to Compel Discovery is DENIED;

      and it is further ORDERED that the Clerk of the Court terminate the aforementioned motion [Docket Entry No. 11] accordingly.


                                              s/ Tonianne J. Bongiovanni
                                    **TONIANNE J. BONGIOVANNI**
                                    **United States Magistrate Judge**