RECEIVED
APR 12 2013
AT 8:30_____M
WILLIAM T. WALSH CLERK

**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

MARK SHVARTSMAN,

    Plaintiff,

v.

LONG TERM DISABILITY INCOME
PLAN FOR CHOICES ELIGIBLE
EMPLOYEES OF JOHNSON &
JOHNSON, et al.,

    Defendants.

Civil Action No. 11-3643 (MAS)

**MEMORANDUM OPINION**

---

**SHIPP, District Judge**

This matter comes before the Court upon separate Motions for Summary Judgment filed by the Parties. Defendant Long Term Disability Income Plan for Choices Eligible Employees of Johnson & Johnson (along with its associated entities) (collectively, "Defendants") filed their Motion for Summary Judgment on September 10, 2012. (ECF No. 19.) Plaintiff Mark Shvartsman ("Plaintiff") filed his Motion for Summary Judgment on that same date as well. (ECF No. 20.) Each party filed an Opposition and Reply. (ECF Nos. 25, 26, 28, 29.) Plaintiff also filed a Motion to Strike Certain Statements contained in Defendants' Opposition to Plaintiff's Motion for Summary Judgment and Statement of Undisputed Material Facts. (*See* ECF Nos. 27, 32.) The Court has carefully considered the Parties' submissions and decided the matter without oral argument pursuant to Federal Rule of Civil Procedure ("Rule") 78. For the reasons stated below, and for other good cause shown, both Plaintiff's and Defendants' Motions

for Summary Judgment are DENIED without prejudice, Plaintiff's Motion to Strike is DENIED as moot and this matter is REMANDED for further administrative proceedings.

## I. Background

Plaintiff was hired by Ortho Biotech, Inc. ("Ortho"), a subsidiary of Johnson & Johnson, as a computer data analyst in 2000.[1] Prior to becoming disabled, Plaintiff opted to become eligible for both short term and long term disability (LTD) benefits offered to him through his employment with Ortho. The LTD benefits were offered through the Long Term Disability Income Plan for Choices Eligible Employees of Johnson & Johnson (the "Plan"). A Plan participant is only qualified to receive LTD benefits if his disability prevents him from performing "any job for which the participant is (or may reasonably become) with or without reasonable accommodation qualified by training, education or experience."[2]

By 2007, Plaintiff had attained the position of Associate Manager, Sales Incentives, with Ortho. In early 2007, Plaintiff received treatment for bilateral carpal tunnel syndrome, including surgery. In July 2007, Plaintiff sought treatment from psychiatrist Leonard Vorobyev, M.D. ("Vorobyev"), who diagnosed Plaintiff with "adjustment disorder with anxiety" and prescribed medication.

On October 21, 2007, Plaintiff was informed that his position was going to be terminated due to a restructuring of Ortho. Shortly thereafter, on October 31, 2007, Plaintiff sought further treatment for depression and associated symptoms from Vorobyev. Plaintiff alleged his symptoms at the time as: pain in both hands from carpal tunnel syndrome, nervousness and

---

[1] The following facts are drawn from Plaintiff's Statement of Undisputed Material Facts, ECF No. 20-2, unless otherwise noted.

[2] While on short term disability benefits, as well as during the first year of receiving LTD benefits, whether a plan participant is disabled is determined by consideration of the ability of the participant to return to his previous occupation rather than whether he is able to perform any occupation.

anxiety, an inability to work on the computer, an inability to sleep, feelings of hopelessness, lack of interest in all activities he once enjoyed, decreased memory, lack of ability to concentrate and that he was "feeling very sad and crying all of the time." Plaintiff submitted a claim for short term disability effective October 31, 2007, that was approved by Reed Group ("Reed"), the administrator of the Plan.

Plaintiff continued treatment with Vorobyev and also began participating in psychotherapy with Barbara Russo, Ph.D. ("Russo"). Plaintiff underwent an Independent Medical Exam ("IME") administered by psychiatrist Syeda Hasan, M.D. ("Hasan"), on February 20, 2008. Hasan diagnosed Plaintiff with "Axis I: Adjustment Disorder with mixed emotional features, history of major depressive disorder, Axis II: Carpal tunnel syndrome." She concluded that he was not able to perform the essential functions of his job. *See* Note 2, *supra*. Hasan recommended that Plaintiff engage in a structured and intensive outpatient program. Reed accepted Hasan's conclusions and required that Plaintiff discuss Hasan's recommendations with Vorobyev.

Plaintiff transitioned to LTD in April 2008. In May 2008, Reed sent Plaintiff a communication requiring that he engage in the outpatient program recommended by Hasan: therapy 3-5 times per week and certain medication changes. Reed further required Plaintiff to apply for Social Security Disability ("SSD") Benefits with the assistance of an outside contractor; Plaintiff complied and was granted SSD on November 1, 2008. Plaintiff also began attending the required intensive therapy.

Following completion of an intensive outpatient program, Plaintiff continued under the care of Vorobyev and began to attend therapy with psychologist Elena Kazakina ("Kazakina"). He attend psychotherapy twice a week with Kazakina in September and October 2008. In

December 2008, Plaintiff began weekly therapy sessions with psychologist Lana Gaiton, Ph.D. ("Gaiton").

In March 2009, Reed required Plaintiff to undergo a neuropsychological IME. At that point, the inquiry under the Plan's language required an analysis of whether Plaintiff was able to perform any occupation. *See* Note 2, *supra*. This IME was conducted by neuropsychologist Kenneth Kutner, Ph.D. ("Kutner"). Kutner diagnosed Plaintiff with "Major Depressive Disorder, Recurrent, and Moderate-Severe Panic Disorder." Kutner ultimately concluded that Plaintiff was unable to perform any full time occupation. Reed accepted that conclusion. The record also indicates that Reed and Kutner engaged in a discussion regarding possible malingering on the part of Plaintiff during the IME. Those concerns, however, were not contemporaneously communicated to Plaintiff. Moreover, Reed itself noted that Plaintiff's "lack of effort on this most recent IME was also reviewed and found to be a result of [Plaintiff's] mental health conditions."

Plaintiff continued treatment under Vorobyev and Gaiton throughout the spring, summer and fall of 2009. On October 27, 2009, Reed notified Plaintiff that it suspected he failed to put forth a reasonable effort during the Kutner IME and that a failure to comply with exams and treatment plans could result in benefit termination. Plaintiff's benefits, however, were continued.

During February and March 2010, both Vorobyev and Gaiton confirmed Plaintiff's ongoing disability. Simultaneously, Reed decided to have Plaintiff undergo a second IME with Kutner. That second IME occurred on April 9, 2010. Kutner diagnosed Plaintiff with "Major Depressive Disorder, Recurrent and Panic Disorder" and noted cognitive impairment in several areas. Kutner, however, concluded that Plaintiff was able to work in a full time occupation with several provisos, namely that any employment be located within 20-30 minutes of Plaintiff's

home and that the hypothetical occupation "not include supervision of other employees or in direct management duties."

Effective April 13, 2010, Reed terminated Plaintiff's LTD benefits and noted in his file, "denial for malingering and per [IME] can work." Plaintiff appealed this decision. A questionnaire was submitted to Vorobyev who returned it to Reed concluding that Plaintiff's disability continued, he was unable to work in any full time position and that Vorobyev had no reason to believe that Plaintiff would intentionally perform poorly on any test. In order to counter Kutner's conclusions, Vorobyev recommended that Plaintiff undergo an additional set of neuropsychological testing.

Plaintiff underwent this further examination by Rimma Danov, Ph.D. ("Danov") on July 30, 2010. Danov concluded that Plaintiff did not malinger during the tests administered by Danov and further concluded that Plaintiff had problems with "executive function" and "major neurocognitive deficits including processing speed, motor speed, upper motor group strength, verbal fluency, confrontational naming, visual and auditory attention, visual scanning and processing, visual memory (graphic and episodic), and reading rate."[3] (AR 512, 518.) Danov recommended that Plaintiff continue neurological treatment, psychiatric treatment, psychotherapy, cognitive rehabilitation treatment and that Plaintiff should "remain on disability until further improvement." (AR 520.)

Reed also requested that Gaiton submit a questionnaire as part of Plaintiff's appeal. Gaiton's response listed various emotional issues that allegedly affected Plaintiff's ability to

---

[3] Defendants dispute the implications of Danov's findings and the context in which Plaintiff presents them to the Court. The Court, for purposes of this Opinion, need not resolve the ultimate veracity of the facts presented. Rather, the Court notes Danov's opinion, as well as the opinions of the other medical professionals mentioned in this narrative, for purposes of outlining the various medical professionals who have dealt with Plaintiff's claim/file and the current state of the administrative record.

5

work. Also during the fall of 2010, Plaintiff began psychotherapy with Ellie Maler, Ph.D. ("Maler"). Her records indicate that Plaintiff continued to suffer from symptoms related to depression which made him "hardly functional." Plaintiff submitted several personal statements as part of his appeal, including his contention that the IME administered by Kutner may have been effected by a language problem.[4]

As part of the appeal, Reed retained neuropsychologist Kristin Fiano, Ph.D. ("Fiano"), to perform a record review. Although conceding that Plaintiff had coginitive limitations, Fiano determined that Plaintiff "is able to work full time in a job that did not require a fast pace or time sensitive deadlines." Reed, relying upon Fiano's review, denied Plaintiff's appeal on November 24, 2010. Plaintiff filed a second and final appeal.

As part of Plaintiff's final appeal, Reed retained psychiatrist Marie Claude Rigaud, M.D. ("Rigaud") and neuropsychologist Alexander Chervinsky, Ph.D. ("Chervinsky"), for an additional peer review of Plaintiff's file. Rigaud noted that Plaintiff "may not be capable of performing an eight hour per day position" and deferred any ultimate determination regarding Plaintiff's ability to work a full time job to Chervinsky. Chervinky, for his part, found that malingering was an issue during all of the neuropsychological examinations and diagnosed Plaintiff with "Possible or Probable Malingering . . . ; Adjustment Disorder, unspecified; . . . Rule out Depressive Disorder NOS." Plaintiff's final appeal was denied on April 19, 2011, with a finding that Plaintiff "does not suffer from a mental health condition that precludes work." Plaintiff filed his Complaint on June 23, 2011.

---

[4] Plaintiff is a native Russian speaker. Danov, unlike Kutner, conducted her examination in English and Russian in order to "eliminate [any] language barrier." (AR 515.)

6

## II. Legal Standard and Analysis

### A. Standard for Summary Judgment

Summary judgment is appropriate if the record shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A district court considers the facts drawn from the "materials in the record, including depositions, documents, electronically stored information, affidavits . . . or other materials" and must "view the inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion." Fed. R. Civ. P. 56(c)(1)(A); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002) (internal quotations omitted). The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986). More precisely, summary judgment should be granted if the evidence available would not support a verdict in favor of the non-moving party. *Id.* at 248-49. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247-48.

### B. Standard of Review

A denial of ERISA benefits is reviewed under the arbitrary and capricious standard. *Brandeburg v. Corning Inc. Pension Plan for Hourly Emps.*, 243 F. App'x 671, 672-73 (3d Cir. 2007); *Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 437 (3d Cir. 1997). The Court exercises only limited review of a plan's decision under the arbitrary and capricious standard. Under the arbitrary and capricious (or abuse of discretion) standard of review, the district court may overturn a decision of a plan administrator only if it is without reason, unsupported by substantial

evidence or erroneous as a matter of law. *Mitchell*, 113 F.3d at 437. The Court is not free to substitute its own judgment for that of the administrator's in determining eligibility for plan benefits. *Fahringer v. Paul Revere Ins. Co.*, 317 F. Supp. 2d 504, 510 (D.N.J. 2003) (citations omitted). Both Parties recognize that the arbitrary and capricious standard controls the Court's analysis. (Pl.'s Br. 7-8, ECF No. 20-1; Defs.' Opp'n Br. 9, ECF No. 25.)

### C. Remand is Required

The record currently before the Court does not allow it to determine whether Reed's decision to terminate Plaintiff's LTD benefits was arbitrary and capricious. As noted by Judge Wolfson, although "a vocational analysis is not a requirement of a claim determination . . . Defendant is still obligated under ERISA to provide a well-reasoned explanation of its decision including which sedentary jobs Plaintiff is capable of working, with or without accommodations." *Dunn v. Reed Grp., Inc.*, No. 08-1632 (FLW), 2009 WL 2848662, at *12 (D.N.J. Sept. 2, 2009) (citing *Havens v. Cont'l Cas., Co.*, 186 F. App'x. 207, 212-13 (3d Cir. 2006)).

Without a vocational analysis the Court is unable to determine which jobs, if any, Plaintiff's current physical and psychological abilities are an appropriate match for. *See Havens*, 186 F. App'x at 212 ("The irreducible logical core of [finding that a claimant is not disabled according to the Plan is a determination that the] claimant has a residual functional capacity that equals or exceeds the functional requirements of a feasible alternate occupation. These two determinations-the claimant's capacity and the occupation's requirements-must together be detailed enough to make rational comparison possible."). Lacking such a comparative vocational analysis, the Court is unable to determine if Reed's finding that Plaintiff was no longer disabled was arbitrary or capricious. As such, this matter is REMANDED for further administrative

proceedings, including a vocational analysis. Such vocational analysis shall be performed by an expert who can communicate and administer the analysis in both the English and Russian languages in order to avoid any issues related to communication. Both Plaintiff's and Defendants' Motions for Summary Judgment are DENIED without prejudice. Plaintiff's Motion to Strike is DENIED as moot. Rather than stay this case, the Clerk of the Court will be instructed to close this case. If Reed finds that Plaintiff's benefits should not be reinstated following further administrative proceedings, Plaintiff is instructed to submit correspondence requesting that the Court reopen this case.

/s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

Dated: April 12, 2013